NO. 07-10-00102-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



AUGUST
24, 2010

 



 

JASON DEAN BOLEN, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 119TH DISTRICT COURT OF TOM
GREEN COUNTY;

 

NO. B-08-0413-SA; HONORABLE BEN WOODWARD, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

OPINION

 

Appellant, Jason Dean Bolen, appeals
his conviction for driving while intoxicated,[1]
a third-degree felony, for which the trial court imposed a sentence of six
years’ incarceration.  We will affirm.

Factual and Procedural History

            Appellant
was driving his pickup truck when Tom Green County Deputy Gary Cole stopped him
for disregarding a stop sign and failing to signal a turn.  After stopping the truck and after a fellow
deputy, Keith Jones, arrived to assist, the deputies asked appellant’s three
passengers to exit the truck, and Cole spoke with the cooperative
appellant.  Cole noted appellant’s
slurred speech, bloodshot eyes, and the smell of alcohol on his breath.  When Cole asked him if he
had anything to drink, appellant responded, “a 12-pack.”[2]  Cole asked appellant to perform the fingertip
touch test, and appellant performed poorly on it.  Based on his observations, Cole told Jones
that appellant may be intoxicated, and Jones called for Sergeant Ron Sanders,
who works in the DWI Selective Traffic Enforcement Program (STEP) and is
specifically trained in and charged with investigating suspected DWI offenses.

            Appellant
also admitted to Sanders that he had consumed “a 12-pack.”  Sanders smelled alcohol on appellant’s breath
and observed that his eyes were bloodshot and his speech was slurred.  Sanders, having known appellant for several years,
testified to the distinction between appellant’s usual speech and his slurred
speech at the scene.  Also, it appeared
to Sanders that appellant had urinated on himself.  Appellant accepted Sanders’s invitation to
perform field sobriety tests (FSTs).  When asked about any physical handicaps,
appellant only noted a sore calf muscle. 
Appellant’s performance on each of the FSTs indicated to Sanders that
appellant was impaired.

            Appellant
agreed to provide a breath sample and was arrested and taken to the Intoxilyzer room at the county jail.  As he is required to do, Sanders, who is
certified by the Texas Department of Public Safety (DPS) to operate the Intoxilyzer, observed appellant for fifteen minutes prior
to the sampling to make certain that no residual alcohol was present in
appellant’s mouth due to belching or other related bodily functions.  Sanders saw no sign that appellant introduced
residual alcohol from his stomach contents into his mouth but admitted that he
did not check appellant’s mouth during that fifteen-minute period.  The results of the Intoxilyzer
test of two breath samples indicated that appellant’s breath alcohol
concentration was 0.136 and 0.135, both readings being above the legal limit of
0.08.  See Tex. Penal Code Ann. § 49.01(2)(B)
(Vernon 2003).

            Appellant
was charged and convicted of the third-degree felony of driving while
intoxicated, third or greater offense.  See
id. § 49.09(b).  Appellant timely
appealed the trial court’s judgment of conviction and raises five issues on appeal.  In his first issue, he challenges the legal
and factual sufficiency of the evidence to support the conviction.  In his second issue, he contends that the
trial court abused its discretion by admitting the Intoxilyzer
results in violation of appellant’s Sixth Amendment right of
confrontation.  In his third issue,
appellant contends the trial court erred by admitting expert testimony when the
expert was not properly designated by the State and when the State failed to
satisfy the reliability test for admission of scientific evidence.  In his fourth issue, appellant complains of
the trial court’s exclusion of evidence concerning appellant’s eyes during
cross-examination of Sanders.  Finally,
appellant maintains that the “trial court erred by including a definition of
reasonable doubt by omission.” 

 

 

Legal and Factual Sufficiency of the
Evidence

Standards of Review

            In
assessing the legal sufficiency of the evidence, we review all the evidence in
the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State,
133 S.W.3d 618, 620 (Tex.Crim.App. 2004).  In conducting a legal sufficiency review, an
appellate court may not sit as a thirteenth juror, but rather must uphold the jury’s
verdict unless it is irrational or unsupported by more than a mere modicum of
evidence.  Moreno v.
State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

            In
assessing the factual sufficiency of the evidence, we must determine whether,
considering all the evidence in a neutral light, the jury was rationally
justified in finding the appellant guilty beyond a reasonable doubt.  See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App.
2006).  In performing a factual
sufficiency review, we must give deference to the trier
of fact’s determinations if supported by evidence and may not order a new trial
simply because we may disagree with the verdict.  See id. at
417.  As an appellate court, we are not
justified in ordering a new trial unless there is some objective basis in the
record demonstrating that the great weight and preponderance of the evidence
contradicts the jury’s verdict.  See
id.  Additionally, an appellate
opinion addressing factual sufficiency must include a discussion of the most
important evidence that appellant claims undermines
the jury’s verdict.  Sims
v. State, 99 S.W.3d 600, 603 (Tex.Crim.App.
2003).  However, when a
defendant's version of the facts conflicts with other evidence, we must
recognize that it is the jury’s prerogative to judge the credibility of the
evidence and to ascribe the weight to be given to the evidence.  See Jones v. State, 944 S.W.2d 642, 647–48 (Tex.Crim.App.
1996).

Analysis

            Appellant’s
challenge to the sufficiency of the evidence focuses on the intoxication
element of the offense.  The record shows
that open and available containers of alcohol were present in the cab of
appellant’s truck.  Appellant admitted to
both Cole and Sanders that he had drunk “a 12-pack.”  Though he did not specify when he drank the
twelve-pack or what type of beverage it was, the jury could have reasonably
concluded that it was beer or another alcoholic beverage that came in such a
package.  Both Cole and Sanders noticed
that appellant had bloodshot eyes and slurred speech and that he smelled of
alcohol.  We add that Sanders, having
known appellant for years, was in a position to distinguish appellant’s slurred
speech at the time of the offense from his usual speech pattern.  Sanders also noted that it appeared that
appellant urinated on himself.  Further,
his performance on the FSTs indicated that he was impaired.  And the Intoxilyzer
results showed that he had a breath alcohol concentration above the legal limit
of 0.08.  Based on such evidence, the
jury could have rationally concluded that appellant was intoxicated.

            Appellant
points to several factors that may have impacted Sanders’s observations during
the FSTs.[3]  For instance, the uneven, caliche
road on which appellant performed the walk-and-turn and one-leg-stand tests
could have affected his performance as could his unlaced work boots and sore
calf muscle.  Appellant also points to
Sanders’s failure to videotape the breath test as evidence undermining the
verdict.  Appellant adds that Sanders did
not check appellant’s mouth before administering the Intoxilyzer
test which could have affected the readings. 
While some of the cited evidence could be said to conflict with evidence
of intoxication, it is within the jury’s purview to resolve any conflict in the
evidence and to ascribe the weight to be given to the evidence.  See Jones, 944
S.W.2d at 647–48.  We find no
objective basis in the record demonstrating that the great weight and
preponderance of the evidence contradicts the jury's verdict.  See Watson, 204
S.W.3d at 417.  A verdict is not manifestly
unjust simply because the trier of fact resolved
conflicting evidence in favor of the State. 
Roise v. State, 7 S.W.3d 225, 233 (Tex.App.—Austin
1999, pet. ref’d).

            Having
concluded that legally and factually sufficient evidence supports the jury’s
finding that appellant was intoxicated, we overrule
appellant’s first issue.

Admission of Intoxilyzer
Test Results; Confrontation Clause

            Generally,
in order to preserve error, there must be a timely and specific objection to
the complained-of evidence.  Tex. R. App. P. 33.1(a)(1)(A). 
“Confrontation Clause claims are subject to this preservation
requirement.”  Davis
v. State, No. AP-75,796, 2010 Tex.Crim.App.
LEXIS 723, at *66 (Tex.Crim.App.
June 16, 2010) (citing Anderson v. State, 301 S.W.3d 276, 280 (Tex.Crim.App. 2009)).

            Because
appellant did not raise a Confrontation Clause objection in the trial court, he
has not preserved the issue for our review. 
We overrule his second issue.

Admission of Officer’s Testimony
Regarding Intoxilyzer

            Appellant
also contends the trial court abused its discretion by admitting Sanders’s
testimony relating to the administration of the Intoxilyzer
and horizontal gaze nystagmus (HGN) tests because the
State had failed to properly designate Sanders as an expert witness and because
the State failed to satisfy the third prong of the reliability test for
scientific evidence as enunciated in Kelly v. State, 824 S.W.2d 568, 573
(Tex.Crim.App. 1992). 
As a result, appellant maintains, Sanders was improperly permitted to
testify as to the procedure followed when administering the Intoxilyzer
test and as to the results of the HGN test.

            As
a preliminary matter, we note that the trial court later instructed the jury to
disregard any and all evidence related to the HGN test.  We must presume the jury followed the trial
court’s instruction in the absence of any indication in the record to the
contrary.  Karnes v.
State, 127 S.W.3d 184, 196 (Tex.App.—Fort Worth
2003, pet. ref’d).  We presume that the jury disregarded the
testimony concerning the HGN test and limit our discussion of this issue to the
Intoxilyzer results. 

 

 

Standard of Review

            We
review the trial court’s admission of evidence for an abuse of discretion and
will not disturb the trial court's decision if the ruling was within the zone
of reasonable disagreement.  Bigon
v. State, 252 S.W.3d 360, 367 (Tex.Crim.App.
2008).

Analysis

            Appellant
maintains that Sanders was not properly designated as an expert and, therefore,
could not testify whether he followed the proper procedure in administering the
breath test.  Further, appellant
contends, Michael Gassiot, a DPS technical
supervisor, was not present during this administration of the Intoxilyzer test and, consequently, could not testify as to
whether Sanders had followed proper procedure. 
Appellant maintains that these two limitations mean that the State could
not prove that the Intoxilyzer test was properly
performed and, therefore, the trial court abused its discretion by admitting
the test results.  Appellant’s issue
involves two concepts:  the State’s
failure to disclose Sanders as an expert witness and the State’s satisfaction
of the reliability test for admission of scientific evidence.  We address each concept in turn.

Disclosure  

            Appellant
moved for discovery of expert witnesses under the following provision:

On motion of a party and on notice to the other parties, the court in
which an action is pending may order one or more of the other parties to
disclose to the party making the motion the name and address of each person the
other party may use at trial to present evidence under Rules 702, 703, and 705,
Texas Rules of Evidence.  The court shall
specify in the order the time and manner in which the other party must make the
disclosure to the moving party, but in specifying the time in which the other
party shall make disclosure the court shall require the other party to make the
disclosure not later than the 20th day before the date the trial begins.

Tex.
Code Crim. Proc. Ann. art. 39.14(b) (Vernon
Supp. 2009).  The trial court
denied the motion,[4]
concluding that the State had already provided a list of its witnesses to
defense counsel.

            Appellant
seems to rely on the general rule that evidence willfully withheld from
disclosure under a discovery order should be excluded from evidence.  See Oprean
v. State, 201 S.W.3d 724, 726 (Tex.Crim.App.
2006).  However, the State’s failure to
designate Sanders as an expert witness did not violate a discovery order; the
trial court denied appellant’s motion for discovery of expert witnesses.  Further, the State did disclose Sanders as a
witness pursuant to the trial court’s earlier discovery order.

            The
State provided notice of its intent to call Sanders as a witness, and was not
ordered to disclose its expert witnesses. 
Even if we accept appellant’s premise that Sanders has to be designated
as an expert to testify to the matters at issue, appellant directs us to no
authority that the State was required to disclose Sanders as an expert witness
in the absence of the trial court’s order to do so.  We add that, because Sanders was the
arresting officer and the operator of the Intoxilyzer,
appellant, whose defense challenged the evidence of intoxication, should have
anticipated that Sanders would testify to the results of the breath test.  So, even assuming that
Sanders had to be designated as an expert and that the State had a duty
to disclose him as such in the absence of an order to do so, any error
associated with this issue would be harmless.

Reliability of Intoxilyzer
results

            The
proponent of scientific evidence must show the trial court, by clear and
convincing evidence, that the evidence is reliable.  To show reliability, three criteria must be
met: (1) the underlying theory is valid; (2) the technique applying said theory
is valid; and (3) the technique was properly applied on the occasion in
question.  Bigon,
252 S.W.3d at 367; Kelly, 824 S.W.2d at
573.  Kelly applies to all
scientific evidence offered under Rule 702 of the Texas Rules of Evidence,
including Intoxilyzer test results.  See Hartman v. State, 946
S.W.2d 60, 63 (Tex.Crim.App. 1997); Henderson v.
State, 14 S.W.3d 409, 411 (Tex.App.—Austin 2000,
no pet.).

            In
the context of breath test results, the Legislature has already determined that
the underlying science is valid and that the technique applying it is valid so
long as it is administered by individuals certified by and using testing
techniques approved by the DPS.  Reynolds v. State, 204 S.W.3d 386, 390 (Tex.Crim.App.
2006).  Evidence of DPS
certification is sufficient to meet the Kelly criteria with respect to
the competence of the breath test operator. 
Reynolds, 204 S.W.3d at 390; see Guardiola
v. State, No. 03-08-00399-CR, 2010 Tex.App. LEXIS 2071, at *10 (Tex.App.—Austin Mar.
23, 2010, no pet.) (mem. op.,
not designated for publication).

            In
a Kelly hearing, then, at which the results of a breath test are
challenged, all the trial court need do to satisfy its “gate-keeping” function
is to determine whether the technique was properly applied in accordance with
the DPS rules on the particular occasion in question.  Reynolds, 204 S.W.3d
at 391; Henderson, 14 S.W.3d at 411.  A peace officer who is certified by the DPS
to operate the Intoxilyzer “need not also be able to
articulate the scientific principle behind the apparatus or the technology
implementing it in order to satisfy the Kelly criteria.”  Reynolds, 204 S.W.3d
at 391.  “As long as the operator
knows the protocol involved in administering the test and can testify that he
followed it on the occasion in question, he need not also demonstrate any
personal familiarity with the underlying science and technology.”  Id.

            Here,
appellant’s issue centers on evidence concerning whether Sanders followed the
proper procedure in administering the Intoxilyzer
test.  More specifically, he challenges
Sanders’s qualification to testify as to the mandatory fifteen-minute
observation period.  DPS regulations
require that “[a]ll breath alcohol testing
techniques” include, inter alia, the
following:

a period
during which an operator is required to remain in the presence of the subject.
An operator shall remain in the presence of the subject at least 15 minutes
before the test and should exercise reasonable care to ensure that the subject
does not place any substances in the mouth. 
Direct observation is not necessary to ensure the validity or accuracy
of the test result.

37 Tex. Admin. Code § 19.4(c)(1) (2006) (Tex. Dep’t of Pub. Safety,
Approval of Techniques, Methods and Programs).

            The
record shows that Sanders was certified by the DPS to operate the Intoxilyzer, and he testified that he complied with the
required fifteen-minute observation period when administering the test.  So, Sanders knew the protocol involved in
administering the Intoxilyzer test and testified that
he followed the protocol on the occasion in question; he need not have also
demonstrated any personal familiarity with the underlying science and
technology.  See Reynolds, 204 S.W.3d at 391. 
The State satisfied the Kelly reliability test per Reynolds,
and the trial court did not abuse its discretion by admitting the Intoxilyzer test results. 
We overrule appellant’s third issue.

Exclusion/Delayed Admission of Pupil
Evidence

            Appellant
sought to show the jurors his eyes so that they could see that his pupils were
not of equal sizes.  This disparity,
appellant maintained, would discredit Sanders’s observations during the HGN
test.  Sanders testified that, in order
for the HGN test to yield reliable indicators, the test subject must have
equally-sized pupils and that appellant had equally-sized pupils at the time of
the test.  Appellant sought to introduce
the eye exemplar during cross-examination of Sanders.  The trial court excluded the exemplar at that
time, concluding that the proper predicate for its admission had not been
established.  Later, the trial court
admitted the exemplar after appellant’s grandmother testified that appellant
had suffered an eye injury in 1992 or 1993 and that, as a result of the injury,
appellant’s pupils were not of equal size. 
On appeal, appellant complains of the trial court’s exclusion of the eye
exemplar during cross-examination of Sanders. 
Appellant’s contention fails to assert reversible error for two reasons.

            First,
the trial court admitted the eye exemplar after appellant’s grandmother’s
testimony when, it found, the proper predicate for the exemplar’s admission was
established.  Appellant
points to nothing in the record that would suggest that the exemplar would have
been more persuasive had the trial court admitted it sooner.  Defense counsel set the groundwork for the
relevance of the evidence, questioning Sanders extensively on the impact of
equally-sized pupils on the HGN test, and the grandmother’s testimony provided
the jury with a time and explanation of the trauma that caused appellant’s
condition.  The jury was then permitted
to examine appellant’s eyes.  The fact
that the evidence, the exclusion of which appellant complains, came into evidence
later, when the trial court found that the proper predicate for its admission
had been established, renders any error associated with the trial court’s
earlier exclusion harmless.  See Preston v. State, 481 S.W.2d 408, 409 (Tex.Crim.App. 1972) (“perceiv[ing] no harm to appellant in the instant case by the
exclusion of the time card when it was subsequently admitted into evidence”).  

            Secondly,
as mentioned, the trial court later instructed the jury not to consider
evidence relating to the HGN test, including “the results and the conclusions”
drawn from it.  The record reveals no
indication that the jury disregarded the trial court’s instruction.  Presuming, then, as we must, that the jury
disregarded any evidence relating to the HGN test, we see no need to present
evidence to rebut evidence that the trial court instructed the jury to
disregard.  See Karnes, 127 S.W.3d at 196. 
That the eye exemplar came in later than appellant would have preferred,
then, is of no moment; the jury did not consider the HGN evidence that the eye
exemplar was intended to address.  The
trial court’s instruction to the jury to disregard the HGN test evidence
rendered any evidence meant to rebut the HGN evidence irrelevant.  See Tex.
R. Evid. 401 (defining relevant evidence as
“evidence having any tendency to make the existence of any fact that is of consequence
to the determination of the action more probable or less probable than it would
be without the evidence”).  Evidence of
appellant’s unequal pupil sizes does not make any fact of consequence more or
less likely in the absence of the HGN test evidence.  Thus, the trial court’s exclusion of the eye
exemplar, regardless of its later admission, was not erroneous.  

            Essentially,
appellant complains of the timing of the trial court’s admission of the eye
exemplar.  Considering that the trial
court later admitted the very same evidence and that, later still, the trial
court instructed the jury to disregard any HGN test evidence which the eye
exemplar was intended to rebut, appellant’s issue does not present reversible
error.  We overrule appellant’s fourth
issue.

Inclusion by Omission of Reasonable
Doubt Definition

            In
his final point of error, appellant complains of the trial court’s inclusion of
the following language in its charge to the jury: “It is not required that the prosecution prove guilt beyond all possible doubt.  It is required that the prosecution’s proof
excludes all ‘reasonable doubt’ concerning the defendant’s guilt.”

Standard of Review

            When
presented with a jury charge complaint, we review the charge under Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh’g).  Under Almanza,
we must first determine whether error exists in the charge and, then, if we
find error, whether such error caused sufficient harm to compel reversal.  See Ngo v State,
175 S.W.3d 738, 743–44 (Tex.Crim.App. 2005).

 

 

Analysis

            The
Texas Court of Criminal Appeals has held that inclusion of this very language
was not error.  See Woods v.
State, 152 S.W.3d 105, 114 (Tex.Crim.App. 2004)
(resolving the split in authority among intermediate courts of appeals noted in
Ochoa v. State, 119 S.W.3d 825, 829 (Tex.App.—San
Antonio 2003, no pet.), whether inclusion of such language was error); see
also Mays v. State, No. AP-75,924, 2010 Tex.Crim.App. LEXIS 480, *54–*55 (Tex.Crim.App. Apr. 28, 2010) (reaffirming the
holding in Woods).  Appellant has
not directed us to contrary authority or any reason that the instant case
presents an exception to the rule in Woods.

            That
said, we decline the invitation to depart from the
holding in Woods.  See Sierra
v. State, 157 S.W.3d 52, 60 (Tex.App.—Fort Worth
2004), aff’d, 218 S.W.3d 85 (Tex.Crim.App. 2007) (noting that an intermediate appellate
court “is bound by the precedent of the Texas Court of Criminal Appeals and has
no authority to disregard or overrule” it); see also Swilley
v. McCain, 374 S.W.2d 871, 875 (Tex. 1964) (announcing that, “[a]fter a principle, rule or proposition of law has been
squarely decided by the Supreme Court, or the highest court of the State having
jurisdiction of the particular case, the decision is accepted as a binding
precedent by the same court or other courts of lower rank when the very point
is again presented in a subsequent suit between different parties”).  Inclusion of the challenged language was not
error.  Accordingly, we overrule
appellant’s fifth and final issue.

 

 

Conclusion

            Having
overruled appellant’s issues, we affirm the judgment of the trial court.

 

 

 

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 

            








Publish.   











[1]
See
Tex. Penal Code Ann. § 49.04 (Vernon 2003), § 49.09(b) (Vernon Supp.
2009).

 





[2]
Cole’s later search of the vehicle yielded an
open 30-pack of beer in the passenger’s floorboard, an open bottle of whiskey,
and a plastic cup the contents of which had been spilled into the driver’s side
floorboard and smelled of alcohol.





[3]
One of the factors he asserts is his unequally
sized pupils.  Because appellant raises a
second issue concerning this evidence, we will not separately address it
here.  For reasons we will explain more
thoroughly, such evidence was irrelevant.





[4]
Although both parties discuss the analysis to be
undertaken when the State fails to disclose a witness pursuant to the trial
court’s discovery order under article 39.14, we see this case as presenting a
different issue.  The trial court had not
ordered the State to disclose its expert witnesses.  Appellant does not challenge the trial
court’s denial of its motion made pursuant to article 39.14.